UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

CHRISTOPHER BRET SENIOR,

    Petitioner,

v.                                                           Case No. 2:08-cv-88
                                                            HON. R. ALLAN EDGAR

GERALD HOFBAUER,

    Respondent.

_____/

## REPORT AND RECOMMENDATION

On July 28, 2005, petitioner Christopher Bret Senior was convicted of unlawfully driving away an automobile under MCL 750.413 and was sentenced as a fourth habitual offender under MCL 769.12, to 4 to 15 years imprisonment. The Michigan Court of Appeals summarized the facts as follows:

> At trial, Frederick Herline testified that, as he left his house at approximately 5:10 a.m. on September 23, 2004, he noticed a Chevrolet Lumina parked at the end of his driveway. Herline saw a man, whom he later identified as defendant, attempting to get into two vehicles parked in driveways across the street. Herline asked defendant what he was doing. Defendant walked up to Herline's truck, and Herline rolled the window down to speak to him. Defendant said that the people living across the street were his friends. When Herline challenged that statement, defendant got into the Lumina and drove away. Herline obtained a partial license plate and reported defendant's behavior to the police. Herline pursued defendant in his truck and phoned a 911 operator. However, defendant was eventually able to elude Herline. Later, Herline met with the police and gave a statement. He described defendant and reported the partial license plate number.
>
> Tuscola County Sheriff's Deputy Michael Mattlin testified that a license plate check led him to the residence of Thomas and Jackie Diedrich. A green Chevrolet Lumina was parked in the driveway of

the Diedrich residence. Its license plate number matched the one reported by Herline. Additionally, the vehicle's doors were unlocked, the keys were on the floor and the hood and tailpipe were warm to the touch. When it was determined that the Diedrichs had not recently driven the vehicle, Mattlin concluded that someone else had done so. Mattlin asked the Diedrichs to identify any potential suspects, and they directed him to the nearby Reif/Senior residence, which was located across the road and about one-eighth of a mile to the north. Mattlin went to the residence and spoke to its occupants, including defendant and his brother, Jason Reif.

Later that day, Mattlin presented a photographic lineup to Herline. The array consisted of two sheets of black and white photographs. Each sheet contained six photographs. Herline indicated his concern about making a proper identification. He chose two photographs, one from each sheet, and indicated that both men had similar physical characteristics to the person that he saw. One of those men was defendant. Mattlin did not consider the other man a valid suspect because, among other reasons, he lived about 35 miles away. Defendant was charged with and convicted of UDAA and sentenced as described above.

Petitioner filed this petition for writ of habeas corpus challenging his convictions and sentences. Respondent has filed an answer and has complied with Rule 5 of the Rules Governing Section 2254 Cases in the United States District Courts. The parties have briefed the issues and the matter is now ready for decision. In accordance with 28 U.S.C. § 636(b), authorizing United States Magistrate Judges to submit proposed findings of fact and recommendations for disposition of prisoner petitions, I am recommending that this petition for writ of habeas corpus be denied.

Petitioner claims the following in his petition:

I. The trial court's ruling admitting the use of inadmissible testimony to support an alleged motive was highly prejudicial, violated the Rules of Evidence and denied [petitioner] the right to a fair trial, and therefore [petitioner] is entitled to a new trial.

II. When, as a result of ineffective assistance of counsel, [petitioner] was denied due process of law because of his attorney's failure to request a corporeal line-up and when counsel did not object to the use of a photograph identification procedure which had been conducted

while [petitioner] was in custody, and the identification violated [petitioner's] due process rights, pursuant to US Const AM XIV; Mich Const Art 1, Sec 17, [petitioner] is entitled to a new trial.

In April of 1996, the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) became effective. Because this petition was filed after the effective date of the AEDPA, this Court must follow the standard of review established in that statute. Pursuant to the AEDPA, an application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). This provision marks a "significant change" and prevents the district court from looking to lower federal court decisions in determining whether the state decision is contrary to, or an unreasonable application of, clearly established federal law. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). To justify a grant of habeas corpus relief under this provision of the AEDPA, a federal court must find a violation of law "clearly established" by holdings of the Supreme Court, as opposed to its dicta, as of the time of the relevant state court decision. *Williams v. Taylor*, 529 U.S. 362, 412 (2000). Recently, the Supreme Court held that a decision of the state court is "contrary to" such clearly established federal law "if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts." *Id.* A state court decision will be deemed an "unreasonable application" of clearly established federal law "if the state

court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* A federal habeas court may not find a state adjudication to be "unreasonable" "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 412. Rather, the application must also be "unreasonable." *Id.* Further, the habeas court should not transform the inquiry into a subjective one by inquiring whether all reasonable jurists would agree that the application by the state court was unreasonable. *Id.* at 410 (disavowing *Drinkard v. Johnson*, 97 F.3d 751, 769 (5th Cir. 1996)). Rather, the issue is whether the state court's application of clearly established federal law is "objectively unreasonable." *Williams*, 529 U.S. at 409.

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy,* 160 F.3d 1131, 1134 (6th Cir. 1998). The habeas corpus statute has long provided that the factual findings of the state courts, made after a hearing, are entitled to a presumption of correctness. This presumption has always been accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989), *cert. denied*, 495 U.S. 961 (1990). Under the AEDPA, a determination of a factual issue made by a state court is presumed to be correct. The petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *see also Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998), *cert. denied*, 527 U.S. 1040 (1999).

Petitioner alleges that the trial court erred in allowing the use of inadmissible testimony to support an alleged motive. Petitioner claims that it was an error to admit Diedrich's testimony that petitioner had an unhappy look on his face to show evidence of petitioner's character and an alleged motive under MRE 404(b). Petitioner alleges that the use of this testimony was

prejudicial, violated the Michigan Rules of Evidence, and denied him a fair trial. The Michigan Court of Appeals found the claims to be without merit:

> On appeal, defendant challenges the trial court's decision to allow Thomas Diedrich to testify about an incident between Diedrich and Jason Reif that was witnessed by defendant and that had occurred two days before the Lumina was stolen. We review a trial court's decision to admit evidence for abuse of discretion. *People v Washington,* 468 Mich 667, 670; 664 NW2d 203 (2003); *People v. Lukity,* 460 Mich 484, 488; 596 NW2d 607 (1999.) Preliminary questions of law regarding admissibility of evidence are reviewed de novo. *People v Lukity*, 460 Mich 484, 488; 596 NW2d 607 (1999).
>
> At trial, over defendant's objection, Diedrich testified he went to defendant's residence to speak to Jason Reif after learning that Reif may have swerved his truck at Diedrich's dog. The trial court ordered this testimony stricken from the record as inadmissible hearsay. Diedrich later testified over objection that he spoke to Reif and asked that he not swerve at the dog. He indicated that defendant was present during the conversation but did not speak. Instead, defendant stared at him with an unhappy look on his face.
>
> Defendant argues that the above testimony constituted improperly admitted character evidence. Evidence of other crimes, wrongs, or acts is admissible under MRE 404(b) if such evidence is: (1) offered for a proper purpose and not to prove the defendant's character or propensity to commit the crime, (2) relevant under MRE 402 to a fact of consequence at trial, and (3) the danger of unfair prejudice does not substantially outweigh the probative value of the evidence under MRE 403. *People v VanderVilet*, 444 Mich 52, 55, 74-75; 508 NW 2d 114 (1993). However, we find that MRE 404(b) is not implicated because the challenged testimony did not describe a crime, wrong, or act committed by defendant.
>
> Defendant additionally argues that the challenged testimony was inadmissible hearsay. However, the trial court ordered nearly all of the challenged hearsay evidence stricken from the record, and the jury was instructed not to consider it during its deliberations. We note first that simply striking testimony from the record and instructing the jury that it may not consider the testimony cannot realistically undo all of the damage done by allowing the testimony in the first place. However, given all of the facts of this case, we cannot say that the challenged testimony was sufficiently prejudicial to defendant to merit reversal. Moreover, defendant fails to identify the statements he

is challenging and fails to cite any authority for his argument. Under these circumstances, we conclude that defendant has abandoned this argument. *Prince v. MacDonald*, 237 Mich App 186, 197; 602 NW2d 834 (1999).

Defendant also challenges the relevancy of the evidence. Relevant evidence is evidence having "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." MRE 401; *People v. Aldrich*, 246 Mich App 101, 114; 631 NW2d 67 (2001). We agree with the trial court's assessment that the testimony at issue was of "[p]retty limited" relevancy to the present case. However, the cumulative effect of the proximity of the involved parties' homes and the time between the interaction and the Lumina being taken, and the defendant's perceived unhappiness with Diedrich, supports a conclusion that it was more probable that defendant had a motive to cause harm to Thomas by taking his vehicle, and that he was the person that actually committed the act charged. MRE 401.

Even if relevant, however, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence. MRE 403. At trial, Reif corroborated Diedrich's testimony that he was the only participant in the incident involving the Diedrich's dog, and that Thomas and Reif were the only participants in the subsequent conversation. We do not find a danger of unfair prejudice that would preclude that challenged testimony. Furthermore, on this record, there is no reason to suspect that the jury used the evidence for an unduly prejudicial purpose. On appeal, defendant claims that the trial court did not instruct the jury that it should not consider the stricken testimony. However, the record clearly demonstrates that the trial court did not instruct the jury to that effect, and jurors are presumed to follow the court's instructions. *People v Graves*, 458 Mich 476, 486; 581 NW2d 229 (1998). We find no abuse of discretion.

To the extent that petitioner's claims regarding Diedrich's testimony are based on alleged violations of Michigan Rules of Evidence, they are not cognizable upon federal habeas review. *Pulley v. Harris*, 465 U.S. 37, 41 (1984); *Engle v. Isaac*, 456 U.S. 107, 119 (1982); *Smith v. Sowders*, 848 F.2d 735, 738 (6th Cir. 1988), *cert. denied* 488 U.S. 866 (1988).

The appropriate inquiry is whether the allegedly improper admission of evidence violated the petitioner's constitutional rights. *Estelle v. McGuire*, 502 U.S. 62, 68 (1991). A federal court will grant habeas corpus relief only where a violation of the state's evidentiary rule results in the denial of fundamental fairness, and therefore, a violation of due process. *Brown, III v. O'Dea*, 187 F.3d 572, 578 (6th Cir. 1999) (citing *Cooper v. Sowders*, 837 F.2d 284, 287 (6th Cir. 1988)).

> "The standard in determining whether the admission of prejudicial evidence constitutes a denial of fundamental fairness is whether the evidence is 'material in the sense of a crucial, critical highly significant factor.'" *Leverett v. Spears*, 877 F.2d 921, 925 (11th Cir. 1989) (quoting *Redman v. Dugger*, 866 F.2d 387, 390 (11th Cir. 1989)).

*Brown, III v. O'Dea*, 187 F.3d at 578.

Petitioner has failed to establish that Diedrich's brief statement about the "unhappy look" deprived him of his federal constitutional right to due process. In all cases where a person stands to be deprived of his life, liberty or property, he is entitled to due process of law. In order to establish a due process violation based upon the presentation of false or misleading testimony or evidence, a petitioner must show that the prosecutor knowingly elicited false material evidence. *Coe v. Bell*, 161 F.3d 320, 343 (6th Cir.1998). Mere inconsistencies in testimony fail to establish knowing use of false testimony. *Id.* As noted above, the Due Process Clause merely gives an accused person the opportunity to convince an unbiased decision maker that, for example, he has been wrongly or falsely accused or that the evidence against him is false. *Martinez*, 444 U.S. at 284, n.9.

Diedrich's testimony did not violate petitioner's right to due process. Furthermore, petitioner failed to prove that the testimony was false or misleading because he cannot show that the prosecutor knowingly elicited false material evidence. Petitioner's claims are even weaker because

much of the evidence he is claiming violated his due process was stricken from the record, as noted by the Michigan Court of Appeals. The jury was instructed not to use this evidence in their deliberations and considering all of the facts of the case, as well as the petitioner's past record, there is no reason to think that the jury reached an unfair verdict. Finally, petitioner has failed to establish that the evidence was prejudicial to his case. Even if the "unhappy face" remark was made to the jury, the evidence is still not prejudicial enough to warrant habeas relief. Therefore, in the opinion of the undersigned, the challenged statement did not violate due process. Petitioner is not entitled to habeas relief on this basis.

In his second claim for habeas relief, petitioner alleges that his attorney was ineffective when she failed to challenge the photographic lineup and failed to move for a corporeal lineup. In addressing this claim, the Michigan Court of Appeals found:

> Effective assistance of counsel is presumed, and the defendant bears a heavy burden of proving otherwise. *People v LeBlanc*, 465 Mich 575, 578; 640 NW2d 246 (2002). To establish ineffective assistance, a defendant must demonstrate that his counsel's performance fell below an objective standard of reasonableness and that counsel's representation so prejudiced the defendant that he was deprived of a fair trial. *People v Pickens,* 446 Mich 298, 302-303; 521 NW2d 797 (1994). A defendant must also overcome the strong presumption that his counsel's performance was sound trial strategy. *People v Carbin*, 463 Mich 590, 599-600; 623 NW2d 884 (2001). Decisions regarding what evidence to present are matters of trial strategy, which this Court will not review with the benefit of hindsight. *People v Rockey*, 237 Mich App 74, 76; 601 NW2d 887 (1999).
>
> If an accused is in custody or can be compelled to appear, identification by photographic show up should not be made unless a legitimate reason for doing so exists. *People v Kurylczyk,* 443 Mich 289, 302; 505 NW2d 528 (1993). Circumstances that might justify use of a photographic lineup include: (1) when it is not possible to arrange a proper lineup; (2) there is an insufficient number of persons available with the accused's physical characteristics; (3) the case requires immediate identification; (4) witnesses are distant from the location of the accused; and (5) the accused refuses to participate in

a lineup and by his actions seeks to destroy the value of the identification. *People v Anderson*, 389 Mich 155, 186-187; 205 NW2d 461 (1973), overruled in part in *People v Hickman*, 470 Mich 602; NW2d 267 (2004).

In *Hickman, supra* at 611, our Supreme Court held that the right to counsel attaches only to identifications conducted at or after the initiation of adversarial judicial criminal proceedings, such as by formal charge, a preliminary hearing, an indictment, an information, or an arraignment. The Court states, "To the extent that *People v Anderson*... goes beyond the constitutional text and extends the right to counsel to a time before the initiation of adversarial criminal proceedings, it is overruled." *Id.* at 603-604.

The lower court record indicates that defendant was arrested on September 23, 2004, but does not state the time of arrest. On the record before this Court, we are unable to determine whether defendant was in custody at the time of the photographic lineup. However, even if defendant was in custody at the time of the photographic lineup, it appears that the lineup occurred before the initiation of adversarial proceedings against him. *Hickman, supra* at 611. Additionally, in light of the fact that Herline chose two potential suspects out of the photographic lineup, it appears that under the totality of the circumstances, the photographic lineup was not unduly suggestive. *Kurylczyk, supra* at 302, 311-312. Furthermore, we note that the defense introduced the evidence of the photographic lineup at trial during cross-examination. Thus, error warranting reversal did not occur because a party cannot obtain relief on appeal for an alleged error at trial to which the complaining party "contributed by plan or negligence." *People v Griffin*, 235 Mich App 27, 46; 597 NW2d 176 (1999). Defendant cannot introduce evidence at trial and claim on appeal that error occurred in its admission. *People v Knapp*, 244 Mich App 361, 378; 624 NW2d 227 (2001). Defendant is unable to demonstrate that defense counsel's failure to raise that challenge denied him the effective assistance of counsel because defense counsel need not "make a meritless motion or a futile objection." *People v Goodin*, 257 Mich App 425, 433; 668 NW2d 392 (2003).

Moreover, we find that the decision by defense counsel to forgo a challenge to the photographic lineup and to forego a request for a corporeal lineup were strategic choices that were made to defend her client. The record demonstrates that the defense hired a private investigator to conduct an independent photographic lineup. However, Herline allegedly refused to participate. Thus, defense counsel was left with two options: to file a motion for a corporeal

lineup or to cease pursuit of a second identification procedure and attack the photographic lineup at trial. A corporeal lineup could have resulted in the identification of defendant as the only suspect in the present case. This choice clearly risked harm to the defense. On the other hand, the circumstances of the photographic lineup provided a significant means for defense counsel to undermine Herline's credibility and his identification of defendant.

On direct examination, Herline identified defendant as the person that he saw attempting to break into two vehicles located across the street from his house. However, defense counsel attacked Herline's credibility and his identification of defendant during the photographic lineup. By eliciting the testimony that defendant and another person looked like the person that Herline observed and pursued in the early morning hours of September 23, 2004, defense counsel was able to highlight the fact that Herline was indecisive during the only identification procedure conducted during the course of the investigation. That Herline identified two potential suspects from the photographic array certainly cast doubt on the credibility or accuracy of his recollection and identification of defendant. Additionally, in her closing argument, defense counsel raised the identity issue in an attempt to cast a reasonable doubt in the jurors' minds, and highlighted the fact that the second individual was never interviewed or investigated by police. Accordingly, we conclude that trial counsel employed reasonable trial strategy and was not deficient in her representation of defendant. Defendant is unable to demonstrate that his counsel's performance fell below an objective standard of reasonableness, *Pickens, supra* at 302-303, and is unable to overcome the strong presumption that counsel's performance was sound trial strategy. *Carbin, supra* at 599-600.

In order to prevail on this claim, petitioner must show that counsel's errors were so serious that counsel was not functioning as counsel guaranteed by the Sixth Amendment, and that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Wong v. Money*, 142 F.3d 313, 319 (6th Cir. 1998); *Bruner v. Perini*, 875 F.2d 531, 535 (6th Cir.), *cert. denied*, 493 U.S. 938, 110 S. Ct. 334 (1989) (citing *Strickland v. Washington*, 466 U.S. 668, 688-96, 104 S. Ct. 2052, 2065, 69, 80 L. Ed. 2d 647 (1984)).

There has been ineffective assistance of counsel where an attorney's performance is so deficient as to prejudice the defense and render the trial unfair and the result unreliable. *Wong*, 142 F.3d at 319; *Austin v. Bell*, 126 F.3d 843, 847 (6th Cir. 1997), *cert. denied*, 118 S. Ct. 1547 (1998). Even if a court determines that counsel's performance was outside the wide range of professionally competent assistance, the petitioner is not entitled to relief if his counsel's error had no effect on the judgment. *Tucker v. Prelesnik*, 181 F.3d 747, 754 (6th Cir. 1999). Rather, a petitioner must show that the probability that the outcome of the case would have been different but for counsel's unprofessional errors is sufficient to undermine confidence in the result. *Wong*, 142 F.3d at 319; *Austin*, 126 F.2d at 848. "The performance and prejudice components of the *Strickland* test are mixed questions of law and fact." *Austin*, 126 F.2d at 848.

The court's review of defense counsel's performance is highly deferential, and defense counsel is presumed to have rendered adequate assistance by exercising reasonable professional judgment and sound trial strategy. *Wong*, 142 F.3d at 319; *Austin*, 126 F.3d at 848. The petitioner must overcome the presumption that, under the circumstances, the challenged actions might be considered sound trial strategy. *Strickland*, 466 U.S. at 689; *Tucker v. Prelesnik*, 181 F.3d 747, 754 (6th Cir. 1999).

As noted above, the Michigan Court of Appeals reviewed this claim and held that the challenged evidence was properly admitted, so that any objection by the defense counsel would have been futile. Moreover, the Michigan Court of Appeals noted that petitioner's counsel employed a reasonable trial strategy and was not deficient in her representation of petitioner. The Michigan Court of Appeals' decision did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of

the United States; or result in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

In summary, the undersigned concludes that petitioner's claims are without merit and therefore recommends that this Court dismiss the petition with prejudice.

In addition, if petitioner should choose to appeal this action, I recommend that a certificate of appealability be denied as to each issue raised by the petitioner in this application for habeas corpus relief. Under 28 U.S.C. § 2253(c)(2), the court must determine whether a certificate of appealability should be granted. A certificate should issue if petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2001). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Consequently, the undersigned has examined each of petitioner's claims under the *Slack* standard.

Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." The undersigned concludes that reasonable jurists could not find that a dismissal of each of petitioner's claims was debatable or wrong. The petitioner has not shown in his second claim that the jury instructions unduly prejudiced the outcome of the trial. Nor did the petitioner prove in his third claim that the prosecutorial misconduct was unreasonable. Therefore, the undersigned recommends that the court deny petitioner a certificate of appealability.

NOTICE TO PARTIES: Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within fourteen (14) days of receipt of this Report and Recommendation. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b). Failure to file timely objections constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also Thomas v. Arn*, 474 U.S. 140 (1985).

      /s/ Timothy P. Greeley
TIMOTHY P. GREELEY
UNITED STATES MAGISTRATE JUDGE

Dated: June 25, 2010